## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Archblock LLC, *et al.*, | Case No. 26-10152 (CTG) |
| Debtors.[1] | (*Joint Administration Pending*) |

### DECLARATION OF MICHAEL BLAND IN SUPPORT
### OF DEBTORS'CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS

I, Michael Bland, hereby declare under penalty of perjury as follows:

I am an attorney-at-law admitted in the State of California. I am the General Counsel and a Manager of Archblock LLC (formerly Win the Game, Inc., ZenTrusts, Inc., TrustLabs, Inc., and Archblock, Inc.) ("**Archblock**"), one of the debtors and debtors-in-possession in these Chapter 11 cases.

### Background

### I.   OVERVIEW OF THE DEBTORS' BUSINESS.

1.      Archblock was formed in 2017 as a financial technology company leveraging blockchain infrastructure with the objective of building an end-to-end asset tokenization platform (the "**Platform**"). Archblock's long-term vision was to enable the digitization and on-chain representation of real-world assets, with compliance, transparency, and scalability at its core.

2.      To finance the development of the Platform, Archblock incorporated TrustToken, Inc. ("**TrustToken**") as a wholly owned subsidiary to raise capital through an exempt offering of

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, to the extent applicable, are as follows:  (1) Archblock LLC (5978); (2) TrueCoin LLC (4296); (3) TrustToken, Inc. (6585); (4) TrueTrading 1 GP LLC (4483); (5) TrueCoin II, LLC (7229); and (6) Archblock (Cayman) (n/a). The location of the Debtors' service address for purposes of these Chapter 11 Cases is: Archblock LLC, PMB1125, 447 Sutter St., Ste 405, San Francisco, CA 94108.

.

Simple Agreements for Future Tokens ("**SAFTs**") in 2017 and 2018, issuing native cryptocurrency TRU tokens to early supporters. The proceeds were used to fund the creation of a functional tokenization platform that would ultimately provide utility and value to TRU token holders.

3.     In December 2017, as an initial proof-of-concept of the Platform, Archblock incorporated TrueCoin LLC ("**TrueCoin**") to tokenize US Dollars into stablecoins that correspond with US Dollars. Archblock launched TrueUSD ("**TUSD**"), the world's second USD-denominated stablecoin, in March 2018 - demonstrating how blockchain technology can be used to tokenize real-world assets. This initial success led to the expansion of Archblock's stablecoin business. Stablecoins are a digital currency product that is meant to maintain a stable value relative to an underlying currency or asset. While most cryptocurrency products are speculative investments, a Stablecoin's value is tied to the value of a specific asset, most commonly an underlying fiat currency. By investing government-backed dollars into Stablecoins, customers receive stable-value blockchain tokens through which they can engage in international cryptocurrency transactions without worrying about large price fluctuations. By 2019, TrueCoin had five stablecoins in the market denominated in USD, HKD, GBP, AUD, and CAD, with more on the product roadmap (collectively, "**TrueCurrency**"). While the stablecoin operations generated credibility and industry traction, they were not the original strategic objective and increasingly consumed operational focus and capital.

4.     In 2022, to support the rollout of TrueFi's decentralized finance asset tokenization platform, Archblock incorporated TrueTrading 1 GP LLC in May 2022 to act as Archblock's proprietary credit portfolio manager on the TrueFi Platform. That initiative was abandoned shortly thereafter, and the entity remains dormant.

4921-4069-0830, v. 2

5.      TrueCoin II was formed in 2019 to operate as a financial management entity for the Debtors' stablecoin business. The initiative was abandoned shortly thereafter, and the entity remains dormant.

6.      Archblock (Cayman) was initially incorporated as TrueTrading in 2018 to manage the Debtors' corporate treasury and operate its proprietary digital asset trading and lending business.

## II.    CORPORATE FORMATION.

7.      Archblock was initially incorporated in 2017 as Win the Game, Inc. and later operated under the names of ZenTrusts, Inc. and Archblock, Inc., before Archblock, Inc. was converted by merger into Archblock LLC on December 20, 2023. TrueCoin LLC was originally incorporated as TrustToken LLC and subsequently changed its name to TrueCoin LLC.

8.      TrustToken, Inc. was incorporated in 2017 in order to raise capital through the issuance of Simple Agreements for Future Tokens to fund the development of Archblock's blockchain-based asset tokenization platform. TrueTrading 1 GP LLC was incorporated in 2022 in order to act as the general partner and manage the affairs of TrueTrading-related entities.

9.      TrueCoin II was formed in 2019 in order to operate as a financial management entity for the Debtors' stablecoin business.

10.     Archblock (Cayman) was initially incorporated as TrueTrading in 2018 to manage the Debtors' corporate treasury and operate its proprietary digital asset trading and lending business.

## III.   CORPORATE STRUCTURE AND CAPITAL STRUCTURE.

11.     As set forth in the organizational structure chart attached as **Exhibit A**, Archblock has seven (7) wholly-owned subsidiary entities that are organized under the laws of the United

States, Gibraltar, and the Cayman Islands. Archblock currently directly owns 100% of the equity in each of the other Debtors. Archblock also owns 100% of the equity in non-Debtors, TrueTrading Asset Management Ltd., Stablecoin Management System Ltd., and Renaissance Ventures Ltd. Additionally, Archblock owns 9.96% of Archblock (Holding) AG, a non-Debtor, and Archblock (Cayman) owns 31.72% of Archblock (Holding) AG.

12.     Attached as **Exhibit B** is a schedule identifying the individuals and entities owning the 15,665,213 issued and outstanding membership interests of Archblock.

13.     Archblock's largest equity holder is Alex de Lorraine, who holds approximately 55.96% of the outstanding membership interests (8,766,450 units). The next largest holder is William Wolf, who holds approximately 21.43% of the outstanding membership interests (3,357,250 units).

14.     Archblock LLC has an outstanding secured, non-recourse loan of $195,100.00 from JTSA Global LLC collateralized with TRU tokens. No other Debtor has issued secured or unsecured debt instruments or preferred equity to raise capital, and their capital structures consist solely of the membership or equity interests described above.

IV.     **EVENTS LEADING TO CHAPTER 11 FILING.**

    A.     **Market, Operational and Management Changes and Decision to File Chapter 11 Cases.**

15.     By mid-2020, Archblock faced a strategic and financial inflection point. The core tokenization platform promised to SAFT purchasers had not progressed at the expected pace due to regulatory concerns and business timing issues. Other tokenization competitors had launched earlier than Archblock and were also not gaining traction on either the supply or demand sides of the business. During this time, Archblock was operating with approximately $10 million in assets and a monthly burn rate of roughly $1 million. As a result, a management reshuffle occurred: the

then-CEO was asked to step aside, and a new CEO was appointed with a mandate to stabilize the business, reduce costs, and refocus on a long-term strategy.

16.     Under the new leadership, Archblock undertook a significant downsizing, materially reducing its burn rate and extending its operational runway. To ensure sufficient capital to pursue the original tokenization vision, management initiated the sale of the TUSD stablecoin business — by then a capital-intensive but non-core operation.

17.     This sale was completed in December 2020, when the TUSD stablecoin platform was sold to Techteryx, Ltd. ("**Techteryx**") for approximately $28 million. Importantly, the transaction included an ongoing services agreement with revenue-sharing components, which was expected to provide a stable and predictable revenue stream to fund the continued development of the original tokenization platform.

18.     In mid-2019, TrueCoin engaged Legacy Trust Company Limited ("**LT**") as an escrow agent to provide escrow services for the funds underlying the Stablecoin currencies. LT later shifted escrow services to its affiliate First Digital Trust Limited ("**FDT**") in December 2020. LT and FDT negotiated for authority to manage certain of the escrow funds on behalf of TrueCoin. LT and FDT, through their retained investment advisor, Yai Sukonthabhund, introduced TrueCoin to the Aria Commodity Finance Fund (the "**Aria Fund**"), which was pitched as a low-risk, short-term investment fund that provided financing for agricultural transportation. TrueCoin invested $97 million initially in the Aria Fund before it sold its TUSD business to Techteryx in December 2020. Techteryx then invested another $468 million in the Aria Fund. Techteryx was eventually able to redeem approximately $63 million, leaving just over $500 million outstanding. Meanwhile, TrueCoin invested approximately £10,000,000 GBP, $5,000,000 CAD, and $15,000,000 AUD in the Aria Fund from the currencies underlying other Stablecoins.

4921-4069-0830, v. 2

19.     In late 2020, Archblock launched TrueFi, a decentralized finance ("**DeFi**") asset tokenization platform. TrueFi was initially designed to tokenize uncollateralized loans, with the ultimate goal of steadily moving upstream in complexity by tokenizing investment funds, real estate, etc. TRU tokens were issued to SAFT purchasers who could use the TRU tokens to manage TrueFi, vote on the issuance of loans, and stake TRU tokens on individual loans as a first loss tranche to absorb initial default losses.

20.     In 2021, Archblock sought to accelerate development and decentralization of TrueFi by acquiring an external business process outsourcing company that provided additional engineering resources to strengthen internal engineering capabilities. Archblock also made selective strategic investments in certain business partners to align incentives.

21.     In 2022 and 2023, Archblock completed the handoff of TrueFi to an external management and development team, further decentralizing the core operations of TrueFi. At the same time, Archblock's new business goal was to build centralized layers on top of TrueFi's infrastructure by first building and launching a centralized, enterprise-grade fund management platform using TrueFi's decentralized technology stack (the "**Fund Platform**"). However, this approach added complexity and execution risk, particularly as the centralized platform depended on infrastructure that was no longer fully owned or controlled by Archblock.

22.     In 2023, a series of external shocks materially impaired Archblock's operating environment. Several critical banking and trust company partners collapsed or were shut down, including Silvergate Bank, Signature Bank, and, most significantly, Prime Trust in Nevada. The Prime Trust failure created potential liabilities to end users of the TrueCurrency stablecoin products, constraining Archblock's ability to relaunch and expand its non-USD stablecoins. As a result, Archblock became almost entirely reliant on revenue generated under the TUSD services

agreement with Techteryx while (i) the Fund Platform was built out and (ii) the TrueCurrency stablecoin platform was relaunched.

23.     In late 2022 and continuing into 2023, the Aria Fund began consistently failing to make coupon payments and timely redeem investments. Significant delays had arisen in redemptions and coupon payments, and reporting and information from FDT regarding the Aria Fund was insufficient and inaccurate, leading TrueCoin to suspect that amounts invested in the Aria Fund by TrueCoin and its affiliates may either be largely unaccounted for or illiquid. Techteryx also experienced delayed payments, and TrueCoin and Techteryx began investigating the Aria Fund and FDT. Eventually, neither TrueCoin nor Techteryx were able to redeem any remaining investments from the Aria Fund or receive any coupon payments. While TrueCoin was able to redeem certain amounts during this process, approximately £4,129,858.17 and HK $1,280,686.55 remains frozen in the Aria fund.

24.     In early 2024, Archblock decided to spin out its non-USD stablecoin platform into a separate Swiss-domiciled corporate group under Archblock (Holding) AG. This move was completed in order to capitalize on the emerging regulatory certainty in Europe over fiat-backed stablecoins, with the hope that a refocused, non-US corporate group, could scale its proven stablecoin technology in the European market.

25.     Back in the U.S., by mid-2024, after multiple development iterations, the Fund Platform could not be successfully launched mainly due to regulatory uncertainty in the United States, which materially impacted business development efforts. Compounding this challenge, Techteryx ceased paying several million dollars in outstanding invoices, effectively cutting off Archblock's primary revenue source.

4921-4069-0830, v. 2

26.     In late 2024, without admitting or denying the allegations, TrustToken and TrueCoin settled charges with the SEC relating to the unregistered offer and sale of investment contracts in the form of the crypto asset TUSD and profit-making opportunities with respect to TrueUSD on TrueFi.

27.     At that time, Archblock held approximately $16 million in assets but faced multiple pending and costly legal matters, including various litigation matters with the Company's ex-CEO, costs and litigation arising from Prime Trust's failure, and a lack of revenue due to Techteryx's non-payment of invoices. Archblock's management undertook another realignment and downsizing, in an effort to conserve capital and focus on two remaining priorities: the development of a new stablecoin platform and the resolution of ongoing legal disputes.

28.     Fundraising efforts were initiated to support this new strategic direction, and one promising primary funding lead emerged. However, this investment lead turned out to be a sophisticated criminal enterprise working out of Eastern Europe, which ultimately defrauded Archblock of approximately $3 million. This loss materially altered Archblock's financial position that could not be remedied through further cost reductions or asset sales. This event also increased Archblock's legal spend as additional outside counsel and investigative resources were brought online. The Company engaged an on-chain investigative firm to track the funds, resulting in approximately $237,000 being successfully frozen in various centralized exchanges and stablecoins.

29.     Additionally, in February 2025 the IRS began making inquiries as to an apparent processing error at the IRS where a FY 2021 tax payment made by Archblock was incorrectly processed and mistakenly issued back to Archblock as a refund. The estimated total liability now (including interest and penalties) is $1,300,000.

30.     As a result, in early 2025, Archblock determined in its business judgment to materially reduce its workforce and begin an orderly wind-down of operations. Archblock (Holding) AG and its subsidiaries also began similar wind-down efforts in 2025.

31.     Throughout 2025, Archblock focused on ceasing remaining activities, resolving obligations where possible, and selling any non-liquid assets. Given the combination of external partner failures, loss of its primary revenue stream, unsuccessful product transitions, litigation expenses, and direct financial fraud, bankruptcy became unavoidable.

### B.     Ongoing and Threatened Litigation.

#### (i)     *Prime Trust Dispute Pending in Delaware Bankruptcy Court*

32.     Prime Trust, LLC acted as the escrow agent for certain of the fiat currency backing Archblock stablecoins. On August 14, 2023, Prime Trust, LLC and certain of its affiliated entities (collectively, "**Prime**") filed a Chapter 11 bankruptcy petition in this Court. That bankruptcy case was jointly administered under the lead case, *In re Prime Core Technologies Inc., et al.*, Case No. 23-11161, which is currently pending before Judge Kate Stickles.

33.     On November 13, 2023, the Prime debtors filed in its bankruptcy case a *Motion of the Debtors for Entry of an Order Authorizing the Debtors to Sell Certain Foreign Currency Free and Clear of All Liens, Claims, Interests, and Encumbrances Pursuant to Bankruptcy Code Section 363* (the "**363 Motion**"). The 363 Motion sought a declaration that foreign fiat currency worth approximately $9 million that was deposited with Prime by Archblock stablecoin customers be declared to be assets of the bankruptcy estate that could be sold and the proceeds made available to general unsecured creditors pursuant to Section 363 of the Bankruptcy Code. On November 27, 2023, Archblock opposed the 363 Motion arguing, among other things, that funds held by an escrow agent cannot constitute property of the bankruptcy estate under applicable law. Accordingly, Archblock argued that the entirety of the foreign fiat currency held by Prime should

be returned to Archblock. Resolution of the 363 Motion was ultimately adjourned *sine die* by Judge Stickles and remains pending to this day.

34.    In August 2025, counsel for Prime raised additional potential claims against Archblock for alleged preferential and fraudulent transfers to or for the benefit of Archblock. Prime threatened to file a new adversary proceeding against Archblock alleging these preferential and fraudulent transfer claims, as well as seeking a declaratory judgment that the approximately $9 million in fiat currency held by Prime for the benefit of Archblock customers constituted property of the bankruptcy estate. Since that time, the parties have been engaged in ongoing discussions to mediate their respective claims against one another.

### (ii)    Celsius Action Pending in Northern District of California

35.    On October 17, 2025, Celsius Network Limited ("**Celsius**"), a former cryptocurrency platform that filed for bankruptcy protection in July 2022, filed a complaint against Archblock, Inc., TrustToken, Inc., and TrueCoin LLC in the United States District Court for the Northern District of California, Case No. 25-8966 (JD). On October 28, 2025, Archblock was served with a copy of the summons and complaint. The Celsius complaint alleges that Archblock and its affiliates "promised customers that their deposits would be held securely and risk-free by 'fiduciary partners' in cash or cash-equivalent," but instead "gambled their customers' deposits on risky offshore investments with partners who disclaimed any fiduciary duties." According to Celsius, when they sought to redeem the underlying cryptocurrency, Archblock refused.

36.    As a result of its allegations, Celsius asserted claims for fraud based on intentional misrepresentation, fraud based on concealment, fraud based on false promises, conversion, money had and received, gross negligence, negligent misrepresentation, breach of contract, breach of fiduciary duty, and violations of California's unfair competition law. Celsius is seeking an award of actual damages in the amount of "approximately USD $12.92 million," plus restitution,

disgorgement, punitive damages, exemplary damages, all prejudgment interest, and attorneys' costs.

37.     Debtors deny these allegations and are defending against what they believe to be meritless claims.

### (iii)     *FTX Dispute in Delaware Bankruptcy Court*

38.     The FTX Recovery Trust alleges that Archblock LLC owed the Trust $8,512,910 (plus unspecified interest and other amounts) as of the November 11, 2022 bankruptcy petition date of FTX and its affiliates' bankruptcy cases (the "**FTX Claim**"). No adversary proceeding has been initiated by the FTX Recovery Trust related to the FTX Claim. The parties are currently engaged in informal discussions as certain Debtors have claims against the FTX estates.

### (iv)     *TrueCoin, LLC v. First Digital Trust Limited – JAMS Arbitration*

39.     TrueCoin initiated a confidential JAMS arbitration against FDT concerning its alleged mismanagement of the TUSD escrow account before the sale to Techteryx and of the non-USD escrow accounts. FDT has asserted a counterclaim for legal fees and has obtained an order requiring TrueCoin to provide significant cash security (representing a portion of the fees FDT allegedly incurred as of the date of the order) as security for FDT's counterclaim.

### (v)     *TrueCoin LLC v. Techteryx Ltd – SIAC Arbitration*

40.     Among the various arbitration proceedings pending at the time the chapter 11 cases were filed filed, TrueCoin is the claimant in a consolidated confidential arbitration filed with the Singapore International Arbitration Centre ("**SIAC**") against Techteryx as the buyer of TrueCoin's USD-pegged stablecoin business. TrueCoin seeks damages related to Techteryx's failure to meet payment obligations. Techteryx has filed a counterclaim related to, among other things, the Aria Fund investments from TrueCoin. There has been no final decision.

### (vi)     *Hong Kong High Court Actions*

- 11 -

41.     Techteryx joined TrueCoin and its former CEO, Alex de Lorraine, to an action it had commenced against other parties in the High Court of the Hong Kong Special Administrative Region, HCA 1906. Techteryx's claims in the Hong Kong action involve the SAA and MSA, both of which require disputes to be resolved in arbitration. Techteryx alleges that TrueCoin is responsible for losses suffered in connection with its investment of escrow funds in the Aria Fund discussed above.

42.     TrueCoin and Mr. de Lorraine dispute the claims in the Hong Kong litigation and applied to the Hong Kong court to stay the case in favor of the consolidated Singapore arbitration. TrueCoin also applied for an anti-suit injunction against Techteryx before the High Court of Singapore. In August 2024, the High Court of Singapore ruled in TrueCoin's favor and permanently enjoined Techteryx from pursuing its pending lawsuit against TrueCoin in the High Court of the Hong Kong Special Administrative Region. On December 18, 2024, TrueCoin and Techteryx entered into a voluntary stay of claims against TrueCoin based on the anti-suit injunction. On January 17, 2025, the Hong Kong court ruled that the claims against Mr. de Lorraine must also be stayed because they fall under the arbitration agreements in the SAA and MSA.

43.     The Hong Kong court ruled that TrueCoin and Mr. de Lorraine, whose legal costs were advanced by TrueCoin, are entitled to recover their costs, including legal fees. On August 27, 2025, they demanded Techteryx pay these costs in the amount of HK$6,460,044.00 plus interest which continues to accrue daily. To date, Techteryx has refused to pay. TrueCoin and Mr. de Lorraine intend to commence taxation proceedings in Hong Kong to recover their costs.

44.     After its claims against TrueCoin and Mr. de Lorraine were stayed in HCA 1906, Techteryx joined TrueCoin to a different pending Hong Kong lawsuit, HCA 161, with substantially similar claims. TrueCoin sought and obtained an Anti-Suit Injunction from the Singapore arbitral

- 12 -

tribunal on July 8, 2025, and is not actively litigating in Hong Kong except as to the recovery of costs.

> ### (vii)    *Daniel An v. Archblock, Inc., C.A. No. 2024-0102-LWW - Appraisal Action*

45.    On February 7, 2024, Archblock's former CEO Daniel An filed a petition for appraisal of his shares in Archblock, Inc. in Delaware's Court of Chancery (the "**Appraisal Action**"). The Appraisal Action is in connection with Archblock's 2023 reorganization merger, after which Mr. An purported to serve a demand for appraisal of his alleged shares in Archblock Inc. Archblock filed its Answer to Petitioner's Verified Petition on April 2, 2024. The parties have each filed various discovery motions and briefings on those motions concluded in October 2025. The parties are awaiting the court's determination regarding those motions.

> ### C.    Objectives of the Debtors' Chapter 11 Cases.

46.    Resolve outstanding litigation and recover the maximum amount for distribution to creditors in an orderly process.

## V.    FIRST DAY MOTIONS.

47.    Contemporaneously with the filing of this Declaration, the Debtors have filed the First Day Motions, seeking orders granting various forms of relief intended to minimize the adverse effects of the commencement of these chapter 11 cases and ensure the efficient administration of these chapter 11 cases. The First Day Motions include the following:

- Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Cases and (II) Waiving Requirements of Bankruptcy Code Section 342(c)(1) and Bankruptcy Rules 1005 and 2002(n);

- Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Operate Their Cash Management System, (B) Honor Prepetition Obligations

Related Thereto, and (C) Perform Intercompany Transactions, (II) Waiving Strict Application of Section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines to the Extent Necessary, and (III) Granting Related Relief;

- Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and (II) Granting Related Relief;

- Debtors' Application for Appointment of Stretto, Inc. as Claims and Noticing Agent;

- Motion of Debtors for Entry of an Order (I) Authorizing Debtors to (A) File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor; (B) File a Consolidated List of Top Thirty (30) Largest Unsecured Creditors; and (C) Redact Certain Personally Identifiable Information of Natural Persons; and (II) Granting Related Relief; and

- Motion of the Debtors for Entry of an Order Limiting Service.

48.     These First Day Motions seek authority to, among other things, ensure the continuation of the Debtors' cash management system, which I believe is essential to fund the Debtors' expenses in these chapter 11 cases. I believe that the relief requested in the First Day Motions is also necessary to allow the Debtors to achieve an immediate and orderly transition into chapter 11, successfully and efficiently negotiate a consensual plan, and successfully complete these chapter 11 cases.

49.     I am familiar with the content and substance contained in each First Day Motion and exhibits thereto. The factual statements contained in each First Day Motion are true and correct to the best of my knowledge, information, and belief, with appropriate reliance on corporate officers and advisors, and each such factual statement is incorporated herein by reference. I believe that the relief sought in each of the First Day Motions is necessary to enable the Debtors to

- 14 -

efficiently navigate these chapter 11 cases, constitutes a critical element in successfully resolving the Debtors' Liabilities, and best serves the Debtors' estates. I believe that the Debtors have satisfied the applicable standards for the relief requested, and that the Court's grant of the requested relief is in the best interests of the Debtors, their estates, as well as that of their creditors and other parties in interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  February 10, 2026
      San Francisco, California

           */s/ Michael Blank*
           Michael Bland

# EXHIBIT A



**DEBTORS**

**NON-DEBTORS**

# EXHIBIT B

| DEBTOR | NAME AND ADDRESS OF INTEREST HOLDER | KIND/CLASS OF INTEREST | PERCENTAGE OF INTERESTS HELD / OUTSTANDING OWNERSHIP |
|---|---|---|---|
| Archblock LLC | Alex de Lorraine [Address on File] | Membership Interests | 55.96% 8,766,450 units |
| Archblock LLC | William Wolf [Address on File] | Membership Interests | 21.43% 3,357,250 units |
| Archblock LLC | Diana Bushard [Address on File] | Membership Interests | 5.57% 872,885 units |
| Archblock LLC | TrustToken, Inc. PMB 1125 447 Sutter St., Ste. 405 San Francisco, CA 94108 | Membership Interests | 5.75% 900,808 units |
| Archblock LLC | Archblock (Holding) AG c/o Centralis Switzerland GmbH Bahnhofstrasse 10 6300 Zug, Switzerland | Membership Interests | 3.69% 578,324 units |
| Archblock LLC | Chris Gold [Address on File] | Membership Interests | 0.74% 116,053 units |
| Archblock LLC | Amanda Reichmann [Address on File] | Membership Interests | 0.50% 77,714 units |
| Archblock LLC | Christina Corrigan [Address on File] | Membership Interests | 0.27% 42,973 units |
| Archblock LLC | Adam Bandeali [Address on File] | Membership Interests | 0.37% 58,192 units |
| Archblock LLC | Daniel Dalton [Address on File] | Membership Interests | 0.34% 52,765 units |
| Archblock LLC | Alex Levine [Address on File] | Membership Interests | 0.29% 45,323 units |
| Archblock LLC | Krzysztof Jelski [Address on File] | Membership Interests | 0.38% 59,716 units |
| Archblock LLC | Hendra Tjahayadi [Address on File] | Membership Interests | 0.24% 38,011 units |

| DEBTOR | NAME AND ADDRESS OF INTEREST HOLDER | KIND/CLASS OF INTEREST | PERCENTAGE OF INTERESTS HELD / OUTSTANDING OWNERSHIP |
|---|---|---|---|
| Archblock LLC | Michał Sieczkowski [Address on File] | Membership Interests | 0.38% 59,740 units |
| Archblock LLC | Conor Ferguson [Address on File] | Membership Interests | 0.13% 20,143 units |
| Archblock LLC | Jamie Smith [Address on File] | Membership Interests | 0.09% 13,429 units |
| Archblock LLC | Alvin Chow [Address on File] | Membership Interests | 0.21% 33,571 units |
| Archblock LLC | Jagoda Anusiewicz [Address on File] | Membership Interests | 0.39% 61,857 units |
| Archblock LLC | Monica Ventura [Address on File] | Membership Interests | 0.32% 49,737 units |
| Archblock LLC | Maciej Gołaszewski [Address on File] | Membership Interests | 0.26% 40,562 units |
| Archblock LLC | Luke Brown [Address on File] | Membership Interests | 0.21% 33,572 units |
| Archblock LLC | Ita Hodder [Address on File] | Membership Interests | 0.21% 33,572 units |
| Archblock LLC | Scott Ryan [Address on File] | Membership Interests | 0.21% 33,572 units |
| Archblock LLC | Artur Wojtysiak [Address on File] | Membership Interests | 0.19% 29,294 units |
| Archblock LLC | Joanna Charczuk [Address on File] | Membership Interests | 0.19% 29,294 units |
| Archblock LLC | Oleksii Pilkevych [Address on File] | Membership Interests | 0.21% 33,572 units |

| Debtor | Name and Address of Interest Holder | Kind/Class of Interest | Percentage of Interests Held / Outstanding Ownership |
|---|---|---|---|
| Archblock LLC | Kerry Fischer [Address on File] | Membership Interests | 0.11% 16,743 units |
| Archblock LLC | Bartłomiej Tarczyñski [Address on File] | Membership Interests | 0.14% 22,534 units |
| Archblock LLC | Nerice Andrada [Address on File] | Membership Interests | 0.09% 13,484 units |
| Archblock LLC | Tom Shields [Address on File] | Membership Interests | 0.08% 12,418 units |
| Archblock LLC | Al-Husein Madhany [Address on File] | Membership Interests | 0.07% 11,683 units |
| Archblock LLC | Nikita Olizarenko [Address on File] | Membership Interests | 0.10% 15,774 units |
| Archblock LLC | Xu Gao [Address on File] | Membership Interests | 0.09% 14,507 units |
| Archblock LLC | Michał Ziętalak [Address on File] | Membership Interests | 0.09% 14,421 units |
| Archblock LLC | William Morriss [Address on File] | Membership Interests | 0.06% 9,574 units |
| Archblock LLC | Rebecca Everitt [Address on File] | Membership Interests | 0.06% 9,232 units |
| Archblock LLC | Antoni Koszowski [Address on File] | Membership Interests | 0.09% 13,429 units |
| Archblock LLC | Maciej Nadolski [Address on File] | Membership Interests | 0.09% 13,429 units |
| Archblock LLC | Piotr Sadlik [Address on File] | Membership Interests | 0.07% 11,267 units |

| DEBTOR | NAME AND ADDRESS OF INTEREST HOLDER | KIND/CLASS OF INTEREST | PERCENTAGE OF INTERESTS HELD / OUTSTANDING OWNERSHIP |
|---|---|---|---|
| Archblock LLC | Harold Hyatt [Address on File] | Membership Interests | 0.04% 6,714 units |
| Archblock LLC | Paulina Michorczyk [Address on File] | Membership Interests | 0.09% 13,429 units |
| Archblock LLC | Martyna Żaglewska [Address on File] | Membership Interests | 0.06% 9,014 units |
| Archblock LLC | Lily Wong [Address on File] | Membership Interests | 0.04% 5,942 units |
| Archblock LLC | Jing Zhao [Address on File] | Membership Interests | 0.03% 4,476 units |
| Archblock LLC | David Steinrueck [Address on File] | Membership Interests | 0.02% 3,916 units |
| Archblock LLC | Saran Chari [Address on File] | Membership Interests | 0.01% 2,090 units |
| Archblock LLC | Marc Pacaldo [Address on File] | Membership Interests | 0.01% 1,919 units |
| Archblock LLC | Eduardo Cheuk-Luo [Address on File] | Membership Interests | 0.01% 839 units |